IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :        CASE NO. 12-06177
                                                :
SABANA DEL PALMAR, INC.                         :        CHAPTER 11
                                                :
        Debtor                                  :
_____               :

OPINION AND ORDER

This case is before the court upon the motion for an order to determine that Sabana del Palmar, Inc. (hereinafter referred to as the "Debtor") is a single asset real estate property or project as defined in the Bankruptcy Code, 11 U.S.C. §101(51B), filed by the Federal Deposit Insurance Corporation's, as Receiver for Weternbank Puerto Rico, (hereinafter referred to as the "FDIC-R"). For the reasons set forth below this court determines that Debtor is a single real estate property or project pursuant to §101(51B) of the Bankruptcy Code, and that, as such, Debtor is subject to §362(d)(3) of the Bankruptcy Code.

Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on August 5, 2012. Debtor listed in Schedule A (Real Property) a lot of land with 69 two or three story houses in a gated community (fully constructed) at Mirabella Village & Club Development in Bayamón, Puerto Rico, with an unknown current value and a secured claim in the amount of $28,977,886. The FDIC-R's claim was included in Debtor's Schedule D (Creditors Holding Secured Claims) as a construction loan in the amount of $28,977,866 and was listed as contingent and unliquidated. The 341 meeting of the creditors was held and closed on September 14, 2012 (Docket No. 40).

The FDIC-R filed proof of claim #5-1 on November 6, 2012 in the amount of $32,070,760.14, of which $9,920,000 is secured (which is the same as the value of the property as included by the FDIC-R) and the remaining $22,150,760.14 is unsecured. On November 30, 2012, Debtor filed an objection to the secured portion of the FDIC-R'S proof of claim #5 alleging that the FDIC failed to produce documentation evincing that it has a perfected lien over Debtor's real property (Docket No.

114). At the hearing held on December 3, 2012 to consider the motion to lift the automatic stay filed by the FDIC-R, the parties agreed that FDIC-R is a secured creditor and that only the amounts owed may be in controversy. The FDIC-R also filed proof of claim #6-1 on November 6, 2012, for a claim which it lists as an unsecured claim in the amount of $8,709,703.97 but whose basis for perfection was included as mortgage/security agreement. Debtor on November 30, 2012 objected to proof of claim #6-1 because the FDIC-R categorized the same as "secured" even though it listed $0 as the amount of the secured claim and it failed to provide support for its assertion as a secured creditor (Docket No. 115).

On August 31, 2012, the FDIC-R filed a "Motion to Determine that Debtor's Property is a Single Asset Real Estate Pursuant to 11 U.S.C. §101(51B)" alleging that Debtor satisfies the three prong test in the statutory definition, and as a Single Asset Real Estate ("SARE"), Debtor is subject to 11 U.S.C. § 362(d)(3) (Docket No. 19). On September 11, 2012, Debtor filed an "...Informative Motion Regarding its Intent to Respond to the FDIC-[R]'s Motion to Declare Debtor a Single Asset Real Estate Project (Dkt. No. 19) and Request for Extension of Time to Respond" requesting until September 28, 2012 to oppose to the FDIC-R's motion to declare that Debtor is a SARE (Docket No. 34). On September 17, 2012, the court granted Debtor's motion requesting an extension of time to respond to the FDIC-R's motion requesting entry of Order that Debtor is a SARE (Docket No. 38).

Debtor filed its "...Response to the FDIC-[R]'s Motion to Declare the Debtor a Single Asset Real Estate under the Bankruptcy Code and Proposal" on September 28, 2012 proposing the following to avoid excessive litigation and ensure its right to reorganize; namely; (i) that the court order Triglid Incorporated ("Triglid"), pre-petition Receiver appointed by the United States District Court for the District of Puerto Rico ("District Court") in a foreclosure case, to return its property to resume administration of the same and in exchange the Debtor will not contest the SARE designation as long as the Debtor has 90 days from the date that possession and administration of its property is returned to Debtor; (ii) if the court determined that Debtor is a SARE to provide the Debtor 90 days from the date of such order to submit a disclosure statement and plan of reorganization and continue to allow the Debtor to be protected by the automatic stay provisions "...due to the fact that the administration of the pre-petition [r]eceiver has already slowed the Debtor's reorganization

2

process"(Docket No. 52). On October 5, 2012, the FDIC-R filed a motion "...to Reply to Debtor's Response to the FDIC-[R]'s Motion to Declare the Debtor a Single Asset Real Estate" requesting five (5) days to analyze and address various issues brought by the Debtor in its response (Docket No. 63).

On October 10, 2012, the FDIC-R filed its "...Reply to Debtor's Response to FDIC-R's Motion for the Court to Determine the Debtor is Subject to 11 U.S.C. §362(d)(3)" by which it reaffirms its position that Debtor is a SARE and argues that despite the fact that Debtor currently is not in possession of the property or of its administration, it is aware of the operations of the same because the pre-petition receiver is providing monthly reports regarding the management and operations of the same in compliance with the receivership Order from the District Court, thus Debtor is able to create a plan and disclosure statement (Docket No. 68).

On October 26, 2012, Debtor filed a "Motion to Inform Regarding Its Opposition to the FDIC's Effort to Designate the Debtor as a Single Asset Real Estate Project under the Bankruptcy Code" by which it argues that Debtor is not a SARE due to the following: (i) "[t]he 69 remaining residential buildings and accompanying lots are all indexed separately by CRIM and taxed as independent and separate properties. The Debtor contends that this fact alone results in the remaining property of the Debtor being categorized as 69 separate units and lots and not a single asset real estate;" (ii) "...the Debtor carries on other business activities than activities incidental to the management of Mirabella Village," such as completion of the Sabana del Palmar project located in Comerio, Puerto Rico which was sold in its entirety (all of the 229 units); (iii) "...Debtor's business is not the passive collection of rents or the proceeds from sales, the Debtor's activities include the identification of parcels of real property suitable to design and build commercial or residential projects, the articulation and development of business models that suit the identified parcels whether commercial or residential activities, analysis of market trends and developments, and supervision of the myriad of details necessary to ensure construction (e.g. the procurement of permits, environmental statements, etc.);" and (iv) the Debtor alleges that two of the prongs necessary for a SARE determination are inapplicable in the instant case (Docket No. 90-1).

Applicable Law and Analysis

*Single Asset Real Estate Cases ("SARE")*

Section 101(51B) of the Bankruptcy Code defines the term "single asset real estate" as, "... real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B). Pursuant to Section 101(51B) in order for a bankruptcy case to fall under the definition of a SARE it must satisfy the following three (3) factors: (i) the real property must constitute a single property or project, other than residential real property with fewer than four residential units; (ii) the real property must generate substantially all of the debtor's gross income; and (iii) debtor must not be involved in any substantial business other than the operation of its real property and incidental activities. In re Philmont Dev. Co., 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995).

The first factor which the bankruptcy case must satisfy is whether the real property constitutes a single property or project, other than residential real property with fewer than four residential units. Apartment buildings and residential projects are within the scope of Section 101(51B). In re Kkemko, Inc., 181 B.R. 47, 50 (Bankr. S.D. Ohio 1995); In re Philmont Dev. Co., 181 B.R. at 224. In the instant case, Debtor acquired title to a parcel of land located in Bayamón, Puerto Rico. Debtor developed the real property into a residential condominium project known as "The Mirabella Village & Club" ("Mirabella Village") located in Hato Tejas, Bayamón, Puerto Rico. Mirabella Village consists of 150 residential units of which 69 units remain unsold. As of this date, Mirabella Village is the only project developed by the Debtor that has remaining residential units remaining to be sold, as all of the residential units of the Sabana del Palmar project in Comerio, Puerto Rico were sold. This court finds that Mirabella Village satisfies the first prong of the SARE test, as it is a single project located in a parcel of land that consists of 150 residential units.

Furthermore, the financing for Mirabella Village was treated as one project by the Debtor. The record shows that the construction loan was used primarily to finance the construction of Mirabella Village and repayment of the of the same was based on the sales proceeds generated from the sale of

4

the residential units from Mirabella Village (Docket No. 19, Exhibit I). The court concludes that the fact that the remaining 69 residential units are all indexed separately by CRIM and taxed as independent and separate properties is for real estate property tax purposes and does not affect the SARE classification, since the 69 remaining units are all part of one project.

The second prong of the SARE test is whether the real property generates substantially all of the Debtor's gross income. The only source of Debtor's income is generated from the sale of residential units. Debtor has not indicated that it derives income from any other source such as the operation of a golf club, the operation of a marina or the operation of a hotel. Thus, Debtor satisfies the second prong of the SARE test.

The remaining and third prong of the SARE test is whether the Debtor has any other substantial business activities other than the operation of its real property, namely the Mirabella Village  project. In In re Kkemko, the court noted that in common usage the term single asset real estate generally referred to buildings or raw land which were intended to be income producing. In re Kkhemko, 181 B.R. at 49. The Debtor has only indicated that, at this point, it is in the process of identifying parcels of real property suitable to build commercial or residential projects and possible markets to sustain these types of projects. These are only potential business ideas which have not been developed. In In Centofante v. CBJ Dev. (In re CBJ Dev.), the court noted that, "[t]he use of the present tense by Congress in §101(51B) suggests that only current activities may be considered in determining whether the debtor is conducting substantial business activities other than the operation of the property." In Centofante v. CBJ Dev. (In re CBJ Dev.), 202 B.R. 467, 472 (B.A.P. 9th Cir. 1996). The other substantial business activities or operations a debtor carries out must be separate and distinct from owning and managing real estate. See  Ad Hoc Group of Timber Noteholders v. Pacific Lumber Co. (In re Scotia Pacific Co., LLC), 508 F. 3d 214, 217 (5th Cir. 2007). This court finds that Debtor is not involved in any substantial business other than owning and managing the Mirabella Village project, thus satisfying the third prong of the SARE test.

<u>Conclusion</u>

In view of the foregoing, the court concludes that Debtor satisfies all three (3) prongs of the SARE test, and, as such, is a single asset real estate case and is subject to 11 U.S.C. § 362(d)(3).

SO ORDERED.

In San Juan, Puerto Rico, this 5th day of December 2012.

*Lamoutte*

Enrique S. Lamoutte
United States Bankruptcy Judge