IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                          :        CASE NO.  12-06177(ESL)
                                :
SABANA DEL PALMAR, INC.         :        CHAPTER  11
                                :
                                :
        Debtor                  :
_____ :

OPINION AND ORDER

This case is before the Court upon the Motion for Turnover of Property  filed by the Debtor, Sabana del Palmar, Inc. ("Debtor"), and the Opposition to Debtor's Motion for Turnover of Property ("Motion to Excuse") filed by the Federal Deposit Insurance Corporation, as receiver for Westernbank Puerto Rico ("FDIC-R").  On September 20, 2012, the Debtor filed its Opposition to the Motion to Excuse Turnover. FDIC-R filed its Surreply to Debtor's Reply to the Motion to Excuse Turnover. On October 12, 2012, Trigild, Inc. (the "Receiver") filed its Brief for Extension of Custodianship of Properties per 11 U.S.C. § 543(d) and the Appointment of Receiver Order. The Debtor filed its response to the Receiver's Brief on October 19, 2012.  On November 7 and 8, 2012, the Court held a combined evidentiary hearing on the Motion for Turnover and Motion to Excuse (the "Hearing").

During the hearing the parties entered into an interim agreement pursuant to 11 U.S.C. § 543(d)(1) regarding the retention of the Receiver until a final decision is entered by the court.  The parties agreed to the following: the Debtor consented to the Receiver staying in place until a final decision is made, the Receiver shall inform the Debtor of all proposed sales, the Debtor shall answer the Receiver informing its position on the proposed sale within 24 hours, an opposition will not necessarily stop the sale, the Debtor will sign the sales contract, and the proceeds from the sale will be deposited in court.  In addition, the Debtor stated there was no contest to the realtor fees as the same are being paid by the FDIC-R.

After considering the evidence presented at the hearing and the post hearing proposed findings of fact and conclusions of law submitted by the parties, the court makes its findings and conclusions.

FINDINGS OF FACT

1. The Debtor is a corporation wholly-owned by Gulfcoast Irrevocable Trust IV ("Trust IV"). The Debtor has no employees.

2. Michael Scarfia, Sr. ("Scarfia") is the sole officer of Debtor and the sole trustee and beneficiary of Trust IV.

3. The Debtor is a real estate company formed in 1996 for the purpose of purchasing real property and constructing 150 residential units for marketing and resale to third parties in a development located in Bayamon, Puerto Rico known as Mirabella Village & Club (the "Property").

4. Originally, the Debtor financed the construction and development of the Property entirely with financing obtained from Westernbank Puerto Rico ("Westernbank"). The loans constitute the outstanding debt that is the subject of FDIC-R's proof of claims.

5. On April 30, 2010, the Puerto Rico Commissioner of Financial Institutions closed Westernbank and FDIC-R was appointed receiver of Westernbank.

6. On March 15, 2012, FDIC-R filed a Complaint in the U.S. District Court for the District of Puerto Rico seeking to enforce its loan documents against Debtor including, without limitation, a foreclosure of the Property. *See* District Court Case Number 12-1188 (the "District Action").

7. The FDIC-R filed a Motion for Appointment of Receiver in the District Action (Dist. Case. No. 12-1188, Doc. 6) . The Debtor consented to the appointment of a receiver.

On July 3, 2012, the District Court entered the Appointment of Receiver attached to the Second Motion for Appointment of Receiver (the "Receiver Order"). The Receiver Order appointed the Receiver as receiver over Debtor's Property and empowers the Receiver to manage the Property, market and sell units in the Property, and to otherwise operate, preserve, and maintain the Property

2

and any property relating to the Property for the benefit of the Receivership Estate. The Receiver, through its agent Mario Levine ("Levine"), took possession and control of the Property upon the entry of the Receiver Order on July 3, 2012.

8. In the Receiver Order, the District Court anticipated the possibility of a subsequent bankruptcy and the requirements of 11 U.S.C. §543, and provided that the Receiver should maintain possession of and otherwise preserve the Property if FDIC-R advised that it would be filing a Motion for Relief from Automatic Stay following the filing of bankruptcy.

9. Shortly after the Receiver Order was entered, Levine interviewed the President of the Homeowners' Association, Enrique Rivera, who informed Levine that Debtor had not paid significant amounts of association dues owed. As a result, the association was underfunded and could not afford to hire security, maintain the common areas, and provide lighting on certain parts of the Property, all of which was needed at the Property.

10. Upon the first inspection of the Property, Levine noticed issues with deferred maintenance including painting and sealing problems, water intrusion, stucco cracking, and units not in condition to be sold.

11. The Receiver also took possession of the bank financials and found only $200 in Debtor's bank accounts.

12. At the time the Receiver was appointed by the District Court, Debtor owed over $112,000 to the Homeowners' Association and $4,500 for property insurance. The FDIC-R subsequently funded the payments.

13. After taking possession of the Property, the Receiver funded a marketing plan with the funds of FDIC-R and hired Ms. Cecy Alfonso to begin marketing the Property. These efforts directly led to the sale of the nineteen (19) units currently under contract.

14. Debtor filed for voluntary bankruptcy protection under Chapter 11 of the Bankruptcy Code on Sunday, August 5, 2012 (the "Petition Date").

15.     Pursuant to ¶44(a) and (b)(ii) of the Receiver Order, the Receiver contacted FDIC-R. FDIC-R conveyed to the Receiver its intention to move the bankruptcy court for both relief from stay and relief from the turnover requirements of 11 U.S.C. § 543.

16.     Pursuant to ¶ 44(b)(iv) of the Receiver Order and 11 U.S.C. §543(a), the Receiver remained in control of the Property to take "such action as is necessary to preserve such property."

17.     On August 24, 2012, the Debtor filed its Motion for Turnover  seeking an Order requiring the Receiver to turn over, *inter alia,* the Property.

18.     On September 6, 2012, the FDIC-R filed the Motion to Excuse seeking an Order excusing the Receiver from the turnover requirements of 11 U.S.C. § 543(b)(1).

19.     The Court conducted the Hearing on Debtor's Motion for Turnover and FDIC-R's Motion to Excuse Turnover on November 7 and 8, 2012.

20.     The Receiver has preserved the Property pending the outcome of the motions to lift stay and require/excuse turnover. Specifically, the Receiver has continued to collect rents, income and profits. The Receiver has made certain disbursements, but only those which are necessary to preserve and protect the Property. The Receiver has not executed any new leases or other long-term contracts (except for Court approved sale contracts), nor done anything that would affect a material change in circumstances of the Property.

21.     The Receiver filed a motion to approve the sale of nineteen (19) units currently under contract.  The Court approved the motion at a hearing on November 7, 2012, and subsequently entered an order on the sales.

22.     It will cost approximately $7,200.00 in repairs and finishing work per unit to complete these nineteen (19) sales.

23.     The repairs and finishing work on the fifty (50) units not under contract will each cost approximately $9,900.00 per unit to make the units saleable.

24.     The FDIC-R has funded all necessary expenses of operating the Property since the Receiver took possession of the Property.

4

25. The Debtor is a single-asset real estate company as that term is defined in the bankruptcy code. The Court previously determined that Debtor is a single-asset real estate company and hereby incorporates the findings of fact from that Order.

26. The Property is currently worth $9,920,000 and presently consists of 150 residential units, 69 of which remain unsold. Of the remaining 69 units, 19 units have been approved by the Court for sale but as of this date the sales have not closed. The value of the Property is not in dispute.

27. The Property is fully built and complete. Accordingly, all that is left to be done in connection with the Property is to sell the subject units.

28. As of the Petition Date, the Debtor owed the FDIC-R $32,070,760.14 on a loan secured by, *inter alia*, a first priority mortgage lien on the Property (the "First Loan") and an additional $8,698,961.45 on a loan secured by an additional lien in, *inter alia*, the Property (the "Second Loan"). The Debtor made prepetition payments to Westernbank in the approximate amount of $27,000,000.

29. It is uncontested that FDIC-R's liens in the Property are perfected.

30. Debtor's only other secured creditor is Centro de Recaudacion de Ingresos Municipales ("CRIM") with a claim in the amount of $872,851.71, and the only priority unsecured creditor is Municipio de Bayamon with a claim in the amount of $111,131.93.

31. Debtor's schedules and the claims filed show a total of $11,766,471.69 of unsecured debts, in addition to the amounts owed to FDIC-R, including $9,352,301.00 in amounts owed to Gulfcoast Irrevocable Trust II, Gulfcoast Irrevocable Trust VI, Gulfcoast Irrevocable Trust XVI, and Gibraltar Construction Company. These entities are related to the debtor.

32. Considering the value of the Property ($9,920,000) and pursuant to 11 U.S.C. § 506(a), including insider claims, and FDIC-R's deficiency from the First Loan as unsecured, and the entire amount of the Second Loan as unsecured, FDIC-R holds 92% of the secured claims and 72% of the unsecured claims in this case.

33. The Receiver has been in control of the Property since the U.S. District Court appointed the Receiver to take control and possession of the Property on July 3, 2012. Scarfia testified that Debtor's plan of reorganization involved managing the Property and apportioning a percentage of the proceeds of the sales of the units of the Property to unsecured creditors.

34. Scarfia testified that Debtor would be obtaining post-petition financing in the amount of $500,000 contingent on giving a super priority status to the proposed lender.

35. Scarfia testified that he would segregate the unsecured creditors by treating the sub-contractors as a separate unsecured class.

36. The Debtor has made proposals to the FDIC-R to pay the balance owed. No agreement has been reached.

APPLICABLE LAW AND ANALYSIS

Section 543 of the Bankruptcy Code, 11 U.S.C. § 543, provides the framework to determine whether a receiver has to comply with the turnover requirement after a debtor files a bankruptcy petition, or may be excepted from the requirement. Section 543 provides that:

> **(a)** A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

> **(b)** A custodian shall--

> > **(1)** deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

> > **(2)** file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

**(c)** The court, after notice and a hearing, shall--

**(1)** protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

**(2)** provide for payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

**(3)** surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

**(d)** After notice and hearing, the bankruptcy court–

**(1)** may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

**(2)** shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

The court stated during the hearing that § 543 must be read in its entirety as one section may not determine the controversy concerning the turnover of property by a receiver upon the filing of a bankruptcy petition. The general rule is the turnover of property and excusal from turnover is the exception. Therefore, a party opposing the turnover of property held by a receiver must demonstrate affirmatively how creditors will be better served if the receiver is retained. The court further stated it would consider three main factors in reaching its decision, that is, likelihood of rehabilitation, available funds for the reorganization process, and mismanagement. In re Lizeric Realty Corp., 188 B.R. 499, 506-07 (Bankr. S.D.N.Y. 1995); In re Constable Plaza Associates, L.P., 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991). See 2010 Ann. Surv. of Bankr. Law 31, 2010 NRTN-ASBL 31.

The general rule is that the receiver, as a custodian, may not take any action regarding the property under its responsibility and must turn over the receivership property to the debtor upon having knowledge of the filing of a bankruptcy petition. 11 U.S.C. § 543(a,b).  A receiver is a custodian under the definition in 11 U.S.C. § 101(10)(A).

Section 543(d) gives discretion to the bankruptcy court, after notice and a hearing, to excuse a duly appointed receiver from the turn over requirement of sections 543(a,b) and allow the receiver to maintain control of the property, which becomes property of the estate after petition date.  The court's discretion is exercised after considering relevant factors.  Some of the factors are those addressed by the court at the hearing and mentioned above.  Further analysis shows there are other factors which may affect the ultimate determination.  The broad terms of section 543(d) demand that a determination of whether turnover is in the best "interest of creditors" be case specific.  Thus, the case facts determine the relevant factors. Evaluating the receiver's performance is relevant.  The court must determine the following: if the receiver has acted expeditiously and professionally in managing the property entrusted to it, if the receiver is preserving the property, it the receiver has adequate controls, and if the receiver is taking adequate steps to sell the property. See 2 L. Distressed Real Est. §§ 28:79 - 29:99.

Factors:

1. Likelihood of successful reorganization

The first factor discussed herein, likelihood of reorganization, incorporates others, such as: availability of funds, mismanagement and equity in the property.  The evidence shows that the debtor's shortage of cash flow led to the failure to pay operational expenses and accumulate unpaid interest on the principal owed.  The failure to pay expenses is an indicia of inability to rehabilitate. In re Tri-Chek Seeds, Inc., 2013 WL 636031 (Bankr. S.D. Ga. 2013). The proffer of a loan in the amount of $500,000, at the time of the hearing a speculative venture, does not offset the negative cash flow. The Debtor's failure to sell the remaining units led to the appointment of the Receiver.  The Debtor tried to impress upon the court at the hearing that it was able to sell the

units for less than the cost currently incurred by the Receiver. The Debtor has failed to move the court to so find. First, the current expenses by the Receiver are being paid by the FDIC-R. The cost of further repairs on the units to be sold, in the Debtor's hands, would be paid to a related corporation. Second, there are no current funds available in Debtor's reach to repair the units. The cost of repairs and payment of taxes even exceeds the prospective injection of operating funds through the projected loan. Inability to sell is also an indicia of absence of likelihood of rehabilitation. In re Terra Bentley II, LLC, 2012 WL 672 1054 (Bankr. D. Kan. 2012). This court examined what constitutes reasonable likelihood of rehabilitation within the context of a motion to dismiss under § 1112(b) in In re Santos Franco, 2012 WL 3071242 (Bkrtcy. P.R. 2012), and stated the following:

> For purposes of this cause, "likelihood of rehabilitation" does not equate "reorganization". Id. Rehabilitation contemplates the successful maintenance and re-establishment of the debtors' business operations and "to put back in good condition; re-establish on a firm, sound basis." In re Vallambrosa Companies, 274 B.R. 721, 725 (Bankr. N.D. Oh. 2002) See also Loop Corp. v. United States Trustee, 290 B.R. 108, 113 (D. Minn. 2003) aff'd 379 F.3d 511 (8th Cir. 2004), cert. denied 543 U.S. 1055, 125 S. Ct. 915, 160 L. Ed. 2d 778 (2005). To determine whether the debtor's business prospects are sufficient to justify a finding of a reasonable likelihood of rehabilitation, the court must analyze if the causes for debtor's continuing losses can be corrected, and if the debtor or some other party in interest is capable or willing to perform the necessary remediation. This is not a "technical [test] of whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization effort." In re Original IFPC S'holders, Inc., 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004). Nevertheless, rehabilitation in a Chapter 11 begins with a confirmable plan. It then requires, at minimum, the prospect of re-establishment of a business. See Loop Corp., 379 F.3d at 518; Loop Corp., 290 B.R. at 113-14. "If the debtor or some other party in interest is unable or unwilling to put together a convincing business plan within a reasonable amount of time, and can offer neither a valid justification for the failure to do so nor a reasonable prospect of being able to accomplish the task in the near future, there is often little reason to proceed with the reorganization." Id. See also In re Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir. 1985) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state ... '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre* ...'")

(citation omitted); A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.), 749 F.2d 146, 151 (2nd Cir. 1984) (dismissal warranted where no prospect of rehabilitation because the debtor lacked the "wherewithal necessary to market their properties expeditiously, [an ability] to devise a reorganization plan grounded in reality" and where secured creditors suffered as a result), cert. denied, 471 U.S. 1138, 105 S. Ct. 2681, 86 L. Ed. 2d 699 (1985); and Johnston v. Jem Dev. Co. (In re Johnston), 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992). "A plan for rehabilitation under Chapter 11 must be based on more than speculative data." In re Schriock Constr. Inc., 167 B.R. 569, 576 (Bankr. D.N.D. 1994). "If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced with continuing losses, and if the debtor's assets are declining in value, the best interest of creditors may require the court to dismiss or order liquidation of the debtor's estate under Chapter 7." In re Macon Prestressed Concrete Co., 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986). Also see In re Kors, Inc., 13 B.R. 676, 681 (Bankr. D. Vt. 1981). "However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." Tennessee Publishing Co. v. American Nat'l Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87 (1936). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" United Sav. Ass'n v. Timbers of Inwood Forest Assoc's., 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (citations omitted). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." In re Canal Place Ltd. Partnership, 921 F.2d 569, 577 (5th Cir. 1991); In re Brown, 951 F.2d 564, 572 (3rd Cir. 1991).

After considering the Debtor's cash flow, the events leading to filing the bankruptcy petition, the lack of equity on Debtor's property, and the percentage of unsecured debt owed to the FDIC-R, the court finds that the Debtor has not prevailed in showing a reasonable likelihood of rehabilitation within a reasonable time.

2. Availability of funds.

Att this time, the Debtor does not have available funds to continue operating and sell the remaining units. The cost of the expenses necessary to put the units in condition to be sold exceeds the potential availability of funds.

3. Mismanagement.

The totality of the circumstances, as shown by the evidence presented at the evidentiary hearing, does not establish mismanagement. The decisions on how to spend the available cash

10

was predicated on the perceived needs of the Debtor. Clearly, there were insufficient funds to defray all operational expenses, particularly maintenance, association dues and taxes.

4. Debtor's equity in the property.

There is no equity in the property. The amounts owed to the FDIC-R on its secured loan are $32,070,760.14, and the value of the property is $9,920,000. In re Franklin, 476 B.R. 545, 552 (N.D. Ill. 2012)

5. Best interests of all creditors.

Considering that the FDIC-R is bearing the cost of selling the units, that the Debtor does not have the funds to put the units in sellable condition, and that the FDIC-R is by far the largest creditor of the estate, and the party moving for the appointment and retention of the Receiver, the court concludes that retention of the Receiver is in the best interest of the creditors.

6. Interests of the debtor.

The only interest shown by the Debtor lies in the payment of the operational expenses to a related corporation, at the expense of the secured creitor, the FDIC-R.

7. Pre-bankruptcy consent to receivership.

The Debtor's pre-petition consent to the appointment of the Receiver favors the continuous possession by the Receiver. 2 L. Distressed Real Est. § 28.96.

8. Receiver's performance.

The testimony of Mr. Levine and Mr. David Scott Hudson, servicer for the FDIC-R, clearly established that the Receiver is performing in a diligent and trustworthy manner, and has established a more efficient marketing and sales plan for the remainder of the units. In sum, the Receiver's performance is in the best interest of creditors.

**CONCLUSION**

In view of the foregoing, the court hereby denies Debtor's Motion for Turnover of Property and grants FDIC-R's Motion to Excuse, pursuant to section 543(d)(1) of title 11 of the United States Code, as "the interests of creditors . . . would be better served by permitting a custodian to

11

continue in possession, custody, or control" of Debtor's Property. The relevant factors favor the Receiver's retention of control of the Property in this case.

SO ORDERED.

In San Juan, Puerto Rico, this 29th day of May, 2013.

Enrique S. Lamoutte
United States Bankruptcy Court

12